## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SHANEKA COOKS** | * | **CIVIL ACTION NO:** _____ |
| | * | |
| **VERSUS** | * | **JUDGE:** _____ |
| | * | |
| **CADENCE OF ACADIANA, INC.** | * | |
| | * | **MAGISTRATE:** _____ |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT WITH JURY DEMAND

Plaintiff, Shaneka Cooks, through undersigned counsel, files this Complaint against Defendant, Cadence of Acadiana, Inc. ("Cadence" or "Defendant") for violations under Title VII of the Civil Rights Act, and the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. §§ 2000e *et. seq*., and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 and avers as follows:

## INTRODUCTION

Shaneka Cooks was a Support Coordinator for Cadence of Acadiana, Inc. ("Cadence") at its Thibodeaux, Louisiana office . Ms. Cooks gave birth to a baby girl on November 20, 2018. Prior to the birth, Ms. Cooks was placed on bed rest for pregnancy related complications. Ms. Cooks' daughter was born with a cleft pallet – which was made known to Cadence as Ms. Cooks' opted to place her daughter in the early childhood development program with Cadence and by Ms. Cooks' directly informing her supervisor. Two days after Ms. Cooks returned from pregnancy leave, Ms. Cooks infant became ill in the early morning hours and needed to be taken to the emergency room. Ms. Cooks notified her employer at 5:30 a.m. that she had to take her daughter

to the Doctor. Shortly thereafter, Ms. Cooks was terminated by her supervisor. Cadence then took all measures necessary to reconstruct the facts surrounding  Ms. Cooks termination.

As a result of her termination and her status as a new mother, Ms. Cooks, who holds a bachelor's degree from Nicholls State University in Psychology, ultimately took a position as a gas station attendant to care for her newborn child to be able to provide for her family.  It was not until 2022, and Ms. Cooks' daughter was four years old that Ms. Cooks was able to find employment commiserate with her education.

The EEOC issued a for cause finding and a Notice of Right to Sue and Ms. Cooks, now, submits to this Honorable Court as follows:

## PARTIES

### 1.

Plaintiff, Shaneka Cooks ("Ms. Cooks"), is an adult citizen and resident of Donaldsonville, Louisiana in Ascension Parish.

### 2.

Made Defendant herein is Cadence of Acadiana, LLC, ("Cadence" or "Defendant"), a Louisiana limited liability company, registered Louisiana business establishment in Lafayette, Louisiana in Lafayette Parish.

## JURISIDICTION AND VENUE

### 3.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Ms. Cooks' claims arise under Title VII of the Civil Rights Act, and the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. §§ 2000e *et. seq*., and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 42:12101, *et seq*.

4.

Venue is proper in this the United States District Court for the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to Ms. Cooks claims occurred in Lafourche Parish at Cadence's office location at 1499 St. Mary Street, Thibodaux, Louisiana 70301, where Ms. Cooks was employed during the relevant time period in this action.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

5.

Ms. Cooks was terminated from Cadence on January 17, 2019, just two days after her return from maternity leave.

6.

On information and belief, Cadence has over fifteen employees, which exceeds the requisite number of employees for claims arising under the ADA or PDA.

7.

Ms. Cooks filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 16, 2019, (the "Charge"). Ms. Cooks filed a Charge for Discrimination based on both "sex" and "disability" against Cadence. As the charge was filed within 300 days of termination, the Charge was timely filed.

8.

The EEOC performed a three-year investigation into the Charge. At the conclusion of this lengthy investigation, a "Determination of Reasonable Cause" was issued by the EEOC in September of 2022.

9.

Following the Determination of Reasonable Cause, the Parties (Ms. Cooks and Cadence) entered into "Conciliation" with the EEOC, which was ultimately unsuccessful.

10.

The EEOC issued Ms. Cooks a Right to Sue Notice on November 9, 2022, and the Parties entered into a series of Tolling Agreements mutually agreeing to extend the statute of limitations.

11.

Pursuant to the effective Tolling Agreement, the Parties agreed to file suit on or before April 25, 2023.

12.

As Ms. Cooks has exhausted her remedies with the EEOC (and has otherwise not reached resolution with Cadence), Ms. Cooks has fully complied with all prerequisites to jurisdiction in this Court pursuant to Title VII of the Civil Rights Act, as codified by the Pregnancy Discrimination Act, and the Americans with Disabilities Act of 1990.

## **<u>FACTS</u>**

13.

Ms. Cooks is currently thirty-four years old. She is a graduate of Nicholls State University, holding a bachelor's degree in psychology with a minor in Family and Consumer Science.

14.

Ms. Cooks is team-oriented and has excellent interpersonal skills. She prides herself on being a working mother and continuously strives to give back to her community.

15.

Ms. Cooks began her employment with Cadence as a Support Coordinator in its Thibodaux, Louisiana location, on March 01, 2017. Ms. Cooks continued in her employment with Cadence until the date of her unlawful termination on January 17, 2018.

16.

Cadence provides support coordination and vocational rehabilitation services throughout Louisiana to consumers and families with special needs. Cadence represents on its website that it that it serves twenty-one parishes in the State of Louisiana. *See* https://www.cadenceofacadiana.org/about-1.

17.

As a Support Coordinator for Cadence in Thibodeaux, Louisiana, Ms. Cooks' job duties entailed creating plans of care for Cadence clients. Ms. Cooks made support phone calls to Cadence clients and provider agencies. Ms. Cooks traveled to Cadence's clients' place of residence (home or nursing home) to evaluate their need for level of care. Ms. Cooks would update client progress, doctor visits, falls, status, and medication changes. Ms. Cooks was also charged with making certain Cadence clients were satisfied with their provider agency. If they were not, Ms. Cooks would make necessary changes to help find a better provider to fit clients' needs.

18.

As Support Coordinator, Ms. Cooks earned approximately $12.50 per hour, with an additional stipend for mileage. Ms. Cooks worked approximately forty (40) hours a week.

19.

Additionally, Ms. Cooks received employment benefits, which included, but were not limited to, private health insurance, including dental and vision insurance. Ms. Cooks was entitled

to sick leave and holiday pay. On information and belief, it was also Cadence's policy to provide employees with unemployment compensation after ninety days of employment.

20.

In or around April 2017, Ms. Cooks learned that she was pregnant. During her pregnancy Ms. Cooks performed all her job duties effectively, with no complaints, until August 27, 2018, when she was placed on bed rest / maternity leave for pregnancy complications.

21.

Ms. Cooks gave birth to her daughter on November 20, 2018, and was released to return to work on January 14, 2019, by her doctor.

22.

Ms. Cooks' daughter was born with a cleft-palate, a birth defect that was made known to Cadence through her daughter's qualification in the Early Steps program at Cadence. While Ms. Cooks was still on maternity leave, Ms. Cooks enrolled her daughter in the Early Steps program where a treatment plan was developed.

23.

There are several complications and expenses that are the direct result of a child being born with a cleft-palate. Specifically, a cleft-palate interferes with a newborn baby's ability to properly feed. Cadence was aware of this because of the minor child being a client of Cadence.

24.

After two full days following her return to work on January 14, 2019, Ms. Cooks and her daughter both became ill.

25.

In the early morning of January 17, 2019, Ms. Cooks and her newborn daughter went to the emergency room. Ms. Cooks notified her supervisor, Lorenda Neal, that she and her daughter were ill and were on their way to the ER. Specifically, Ms. Cooks texted Ms. Neal at 5:19 a.m. on January 17, 2019, to inform her that "*I won't be able come into work today. We're taking S.S.[1] back to the doctor. She's been up all night crying and scratching at her ears.*" Ms. Neal responded to this text message and notified Ms. Cooks that she "*hopes she feels better*" and Ms. Neal would need to reschedule her appointments for that day.

26.

Ms. Cooks and Ms. Neal had two (2) telephone conversations following that text message communication.

27.

While Ms. Cooks was dealing with the illness, the first telephone conversation took place between Ms. Cooks and Ms. Neal ("the First Phone Call"). During the First Phone Call, Ms. Neal expressed concern and made comments related to Ms. Cooks' status as a new mother and her recent pregnancy and childbirth. The conversation included Ms. Neal directly informing Ms. Cooks that she needed to either resign or be terminated. In furtherance of her suggestion, Ms. Neal advised Ms. Cooks that as a mother, she needed to stay home with her sick child, but, as a supervisor, Ms. Neal could not sit around and worry about whether or not Ms. Cooks would be coming into work. Ms. Neal told Ms. Cooks she either needed to resign or be terminated.

---

[1] To protect the privacy of Ms. Cook's minor child, only her initials are used herein.

28.

Ms. Cooks, having been in the emergency room with her newborn and shocked after this First Phone Call, simply informed Ms. Neal (during the First Phone Call) that she would speak with her about the absence upon her return to work the following week. Again, Ms. Cooks was advised during that call to either "resign" or "be terminated."

29.

Following the First Phone Call, Ms. Cooks reached out to her mother, Odella Cooks, who advised that she would help Ms. Cooks with childcare and any future problems that might arise with Ms. Cooks' child so that Ms. Cooks could continue in her employment as Support Coordinator with Cadence. Ms. Cooks had always desired to and needed to continue working as a mother to provide for her family at that time. A resignation was simply not possible.

30.

At some point that evening on January 17, 2019, two Cadence employees reached out to Ms. Cooks to ask her about her "departure" from Cadence. They learned about this in a meeting that Ms. Neal held earlier that day wherein Neal advised Ms. Cooks' co-workers that she was no long employed by Cadence.

31.

Ms. Cooks advised the employee that she did not resign or quit, and that her daughter was sick and had to go to the emergency room.

32.

Ms. Cooks and Ms. Neal had a conversation the following day, on January 18, 2023, (the "Second Phone Call") where Ms. Cooks advised Ms. Neal that she would not resign and that her mother would be taking care of her newborn.

33.

During this Second Phone Call, and despite Ms. Cooks indicating that she did not wish to resign, Ms. Neal advised Ms. Cooks that she had been terminated and that her personal belongings were available for pickup at Cadence. Ms. Neal terminated Ms. Cooks despite knowing that Ms. Cooks had procured *additional* childcare for her daughter and had informed co-workers that she had not resigned.

34.

The EEOC investigation revealed that Ms. Neal had emailed Cadence's Executive Director and other employees on January 17, 2019that Ms. Cooks had resigned —. This email was sent the same day that Ms. Cooks told Ms. Neal that she was taking S.C. to the ER and Ms. Cooks responded that she would reschedule Cooks' appointments for work that day. Ms. Neal's January 17 email to the Executive Director of Cadence and other employees was, unequivocally <u>false</u>.

35.

Despite Ms. Cooks' exemplary record as an employee, her pregnancy-related leave, and Cadence's knowledge of S.S.'s birth defect, and need for upcoming surgery, Ms. Cooks was terminated on January 17, 2019 in direct violation of her caregiver rights protected by Title VII, and rights to be protected against discrimination pursuant to Title VII and the ADA.

36.

Thereafter, Ms. Cooks received COBRA paperwork and a termination notice which stated that Ms. Cooks "quit without notice." Ms. Cooks disagreed with Cadence's representation that she had quit without notice and immediately contested this at the Louisiana Workforce Commission ("LWC").

37.

Ms. Cooks disputed her termination with the Louisiana Workforce Commission and sought unemployment benefits that she was entitled to by virtue of Cadence's policy for employees who have been employed for more than ninety (90) days.

38.

Despite the fact that Ms. Cooks was employed for well over ninety (90) days, under Cadence's policy, and despite the fact that Ms. Cooks did not resign, Cadence vigorously contested Ms. Cooks' right to receive unemployment compensation. Ms. Cooks had informed the LA Workforce Commission that she did not resign and that it was Cadence's policy to provide employees with unemployment compensation after ninety (90) days of employment. Ms. Cooks advised her supervisor and co-workers that she did not resign and never sent any correspondence indicating her intent to resign.

39.

Ms. Cooks was initially denied unemployment benefits.  On appeal, the Administrative Judge reversed the LWC's determination that Ms. Cooks was disqualified for unemployment benefits after reviewing the evidence.

40.

A Cadence representative testified during an unemployment hearing that it never received a resignation letter from Ms. Cooks.  Ms. Cooks vehemently objected to any contention that she quit her job and introduced text message evidence supporting her testimony.

41.

After Cadence's effort to deprive Ms. Cooks of her unemployment benefits failed, they turned their efforts to fight Ms. Cooks at the EEOC.  As a result of this, Ms. Cooks' damages mounted.

42.

First, Ms. Cooks lost her private health insurance and had to change medical providers for her pregnancy related treatment, as well as for her daughter's disability and necessary care. This substantially impacted Ms. Cooks. Ms. Cooks could not afford COBRA at the time of her termination.

43.

Following her termination, Ms. Cooks began to seek new employment, as she needed an income to care for her daughter.

44.

As a college graduate, Ms. Cooks continued to search for better employment submitting hundreds of applications through the online job search platform Indeed.com and by other available means.

45.

As early as February 11, 2019, approximately two weeks following her termination, Ms. Cooks applied for three separate positions.

46.

Ms. Cooks submitted multiple applications seeking employment. Some of these interviews were in other cities. Ms. Cooks lost hundreds of dollars in gas money traveling to and from these interview locations. Ms. Cooks list of applications included but was not limited to: Unitech in Houma; Enterprise in New Orleans; Nicholls State; Walmart; Geaux Services; and It's Fashion.

47.

Unemployed and unable to meet her financial obligations, Ms. Cooks vehicle was repossessed, her credit plummeted, and she lost her account with a credit union she had been with since she was

eighteen years old. Ms. Cooks lost her checking account and her credit card in October or November of 2019.

48.

Unable to find employment commiserate with her education and experience, in March 2020, Ms. Cooks accepted a position as a gas station attendant/clerk earning $9.25 an hour and working part-time. Ms. Cooks received no benefits at the gas station.

49.

In May 2020, Ms. Cooks was hired at Fletcher Technical Community College working in the Juvenile Justice Department. At Fletcher, Ms. Cooks earned $15.00 an hour but was only offered a part-time position with no employment benefits.

50.

Finally, in April 2022, three years following her termination, a pandemic, and Hurricane Ida, Ms. Cooks was able to find full time employment in her field and became eligible to receive employment benefits for her and her child.

51.

Ms. Cooks has suffered extreme mental anguish as a result of being terminated and unable to provide for her newborn and disabled daughter. Ms. Cooks had to move in with her mother and borrow money for feeding devices to feed her child. Ms. Cooks mental health deteriorated as a direct result of her termination.

52.

To date, Ms. Cooks suffers from anxiety and panic attacks as it relates to any need to take off work for any sort of personal matter related to her or her daughter's health. Ms. Cooks is under the care of a health care provider to address these issues.

## CLAIMS FOR RELIEF

Ms. Cooks suffered actual and severe economic damages, including the costs associated with loss of wages and the inability to immediately secure employment as a result of the termination. Further, Ms. Cooks suffered actual and severe non-economic damages.

For the reasons set forth herein, Plaintiff's termination was in violation of federal and state law, and has resulted in extensive damage to her, for which she is entitled to back pay, front pay, lost benefits, loss of value of retirement plan, compensation for emotional distress and anxiety, liquidated/punitive damages (where applicable), attorneys' fees, and such other legal and / or equitable relief to which she may be entitled as a matter of law.

## Count One: Violation of Title VII of the Civil Rights Act and the Pregnancy Discrimination Act

Ms. Cooks reasserts each of the allegations set forth throughout the entirety of the Complaint.

Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act, bars an employer from discriminating against an employee on the basis of sex, including discrimination based on the employee's pregnancy, medical conditions related to pregnancy and caregiver responsibilities.

Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act, bars an employer from discriminating against an employee on the basis of sex, including discrimination based on the employee's caregiver responsibilities.

The Pregnancy Discrimination Act applies to cases of discrimination that resulted in termination. Ms. Cooks asserts that she was terminated in direct violation of her rights pursuant to Title VII of the Civil Rights Act against pregnancy discrimination and caregiver responsibilities.

Ms. Cooks was a pregnant female, and new mother, who was terminated just two days following her return from pregnancy leave after notifying her supervisor that she had to take her newborn child to the doctor.

Defendant knew that Ms. Cooks was pregnant and had just given birth to a daughter with a birth defect, as Ms. Cooks had pregnancy complications prior to the birth of her child, and then placed her child in Defendant's Early Steps program.

Defendants contention Ms. Cooks resigned from her position is false. Ms. Cooks did not resign and instead was terminated by Cadence in direct violation of Title VII of the Civil Rights Act.

By intentionally terminating Ms. Cooks on the basis of her pregnancy and caregiver responsibilities, Defendant violated Plaintiff's rights under Title VII. Defendant intentionally treated Plaintiff differently and discriminated against her based upon the assumption of her caregiver roles, despite Ms. Cooks being able to main her performance in her position. Defendant also discriminated against Ms. Cooks for her pregnancy.

Ms. Cooks submits that as a result of Defendant's willful act and / or act of wanton disregard in terminating her employment, for each and / or all of the reasons set forth herein, Defendant is liable to Ms. Cooks for all damages she sustained which are recoverable under Title VII, including her monetary losses, an amount in damages, interest on all sums due, court costs, and attorneys' fees.

**Count II- Violation of LSA-R.S. 23:342, *et seq***
**Louisiana Pregnancy Discrimination**

Ms. Cooks reasserts each of the allegations set forth throughout the entirety of the Complaint.

Louisiana law, as codified by LSA-R.S. § 23:342 forbids discrimination on the basis of pregnancy, childbirth, or a related medical condition.

Ms. Cooks was pregnant and terminated two days following her return from maternity leave.

Ms. Cooks submits that as a result of this discrimination based upon a pregnancy, Defendant is liable to Ms. Cooks for all damages she has sustained, including but not limited to back pay, front pay, lost benefits, compensation for emotional distress and anxiety, liquidated/punitive damages, costs, and attorneys' fees, and such other legal and equitable relief to which he may be entitled.

**Count III– Violation of Rights under**
**the Americans with Disabilities Act of 1990**

Ms. Cooks reasserts each of the allegations set forth throughout the entirety of the Complaint.

A disability under ADA is "an impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having a disability." 42 U.S.C. §12102(2); 29 C.F.R. § 1630.2(g).

Ms. Cooks suffered several complications related to her pregnancy and her health thereafter.

An employee with a disability is entitled to reasonable accommodations that do not constitute an undue hardship on the employer. 42 U.S.C. §§ 12112(b)(5)(A); 29 C.F.R. § 1630.9.

Ms. Cooks had complications related to pregnancy that restricted her everyday activities and Defendant was aware of these complications both during and after her pregnancy.

Ms. Cooks, just two days following her maternity leave, advised her supervisor that she had and her infant daughter were both ill and needed care from the ER.

Defendant, despite knowing that Ms. Cooks had a previous disability terminated her. This termination was done as a result of her pregnancy complications and furthered as a result for her need to handle matters related to pregnancy and childbirth issues following her return from maternity leave.

This termination was in violation of Ms. Cooks' employment rights pursuant to the Americans with Disabilities Act of 1990.

## DAMAGES

Ms. Cooks has suffered severe damages as a result of the intentional actions as more fully stated herein. These damages, which will be proven at trial, include, but are not limited to, the following:

A.  Past lost wages

B.  Past loss of employment benefits;

C.  Past and future medical expenses;

D.  Past and Future Emotional distress;

E.  Attorneys' Fees;

F.  Costs; and

G.  All other equitable relief to which Ms. Cooks may be entitled.

## DEMAND FOR JURY TRIAL

Ms. Cooks requests that this matter proceed before a trial by jury.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff Shaneka Cooks requests judgment be entered against Defendants and that the Court grant the following:

a.  Plaintiff requests a trial by jury.

b.  Wherefore Plaintiff requests judgment be entered against Defendants and that the court grant the following:

   a.  Declaratory relief;

   b.  Judgment against the Defendant for Plaintiff's asserted causes of action;

   c.  Award of compensatory damages;

   d.  Award of special damages;

   e.  Award of costs and attorneys' fees as provided for by statute;

   f.  Award of economic losses, including but not limited to back pay, and lost benefits, as established at trial;

   g.  Pre and post-judgment interest; and

   h.  An order for such other and further relief, at law or in equity, to which Ms. Cooks may be justly entitled.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**[Signature block on following page]**

17

Respectfully Submitted,

**Sternberg, Naccari & White, LLC**

_____
**CHELSEA B. CUSIMANO**, La. Bar No. 34857 **(T.A.)**
**M. SUZANNE MONTERO**, La. Bar No. 21361
**KATHERINE B. WELLS,** La. Bar. No. 36077
**MEGHAN E. CARTER,** La. Bar. No. 35074
935 Gravier Street, Suite 2020
New Orleans, Louisiana 70112
Telephone: 504.324.2141
Facsimile:  504.534.8961
cbc@snw.law | suzy@snw.law | katherine@snw.law |
meghan@snw.law
*Counsel for Complainant, Shaneka Cooks*